# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

FILED

June 8, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**DARECK L. TOMBLIN,**
**Claimant Below, Petitioner**

**vs.)    No. 16-0703** (BOR Appeal No. 2050896)
(Claim No. 2011034070)

**CONWAY FREIGHT, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Dareck L. Tomblin, by William R. Wooten and Melissa R. Lyons, his attorneys, appeals the decision of the West Virginia Workers' Compensation Board of Review. Conway Freight, Inc., by T. Jonathan Cook, its attorney, filed a timely response.

The issue on appeal is whether vertigo of central origin, lumbar degenerative disc disease, degeneration of the cervical disc, benign paroxysmal positional vertigo, and peripheral autonomic neuropathy are compensable conditions. The claims administrator denied the request to add vertigo of central origin to the claim on November 27, 2013. Thereafter, the claims administrator denied the request to add lumbar degenerative disc disease, degeneration of the cervical disc, benign paroxysmal positional vertigo, and peripheral autonomic neuropathy to the claim on April 28, 2014. The Office of Judges affirmed the claims administrator's decisions on October 2, 2015. The Board of Review affirmed the Order of the Office of Judges on June 27, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Mr. Tomblin, a truck driver for Conway Freight, Inc., was involved in a tractor trailer accident at work on April 12, 2011. Mr. Tomblin injured the left side of his back, ribs, and elbow. He was treated at MedExpress and diagnosed with a left chest contusion. On April 15, 2011, Mr. Tomblin sought medical treatment at Saint Francis Hospital. The medical records indicate he was seen with complaints of left rib and lung pain. An x-ray of the left ribs revealed a fracture of the left tenth rib anterolaterally with no pneumothorax or hemothorax. It also revealed some degenerative change in the shoulders and spine. The claims administrator held the claim compensable for a chest wall injury on April 22, 2011.

From April of 2011 through January of 2014 Mr. Tomblin was treated at Lincoln County Primary Care for follow-ups. The notes indicate that Mr. Tomblin suffered a fractured left rib and had some torn chest wall muscles, contusions, and possible bruising of the kidney. He was due to return back to work in May of 2011. He developed back pain and was treated by Dr. Werthammer for degenerative disc disease. In April of 2013, Mr. Tomblin began complaining of vertigo. He was diagnosed with peripheral autonomic neuropathy, displacement of thoracic or lumbar intervertebral disc without myelopathy, lumbar intervertebral disc without myelopathy, and degeneration of cervical intervertebral disc. It was noted that Mr. Tomblin continued to have cervical and lumbar back pain and associated vertigo. He also had difficulty with neuropathy causing weakness and numbness to his lower extremities. He had a previous evaluation with Matthew Werthammer, M.D., who indicated Mr. Tomblin was non-operable. Pain management and balance training were recommended.

On May 10, 2011, Kevin Milam, M.D., saw Mr. Tomblin for follow-up. He noted he was feeling a lot better but still not at full capacity. He indicated he was a little worried that he would not be able to perform up to par because his job entails lifting, pulling, twisting, and other movements likely to cause him further injury and pain. He was worried that if he were not able to perform his job correctly it could cause problems with his employer. The assessment was left-sided rib fracture, resolving. The notes indicate Mr. Tomblin was doing well and should be able to return to full duties the following Monday. On March 15, 2012, Mr. Tomblin underwent a nerve conduction study which revealed results consistent with carpal tunnel syndrome; however, it was deemed an abnormal study. It was noted Mr. Tomblin had previously had carpal tunnel release surgery. There was also evidence consistent with mild chronic right cervical radiculopathy. Involvement of the C5 and/or C7 could not be excluded. It also stated that Mr. Tomblin had a double crush or two separate conditions that may result in upper extremity pain and similar sensory symptoms.

An MRI performed on September 19, 2012, revealed disc osteophyte complex throughout the cervical spine and advanced cervical spine degenerative disc disease causing moderate to severe degrees of central canal and foraminal stenosis. Central canal stenosis was most severe at C6-7. An age of injury analysis from Diagnostic Dating Specialists, LLC, stated that all MRI scans showed a chronic degenerative process rather than any acute injury.

On October 22, 2012, Dr. Werthammer performed a neurosurgical consultation. Mr. Tomblin presented with worsening neck and arm pain. He reported pain extending from the posterior cervical region into the shoulder and down the arm with intermittent numbness and

tingling in his hands. It was noted that he had previously undergone a carpal tunnel release. He denied gait instability, clumsiness, or incoordination. He reported some burning in the lateral aspect of both legs. The impression was degenerative cervical spinal disease with chronic neck and intermittent arm pain. Dr. Werthammer recommended Mr. Tomblin undergo cervical physical therapy to include traction and for arrangements to be made for him to see a pain specialist and possibly undergo a series of injections. He was also prescribed medications.

A lumbar MRI performed on January 31, 2013, revealed prominent diffuse disc bulging at the L2-3, L3-4, and L4-5 levels. There was moderate acquired canal stenosis. Neural foraminal narrowing was most significant at L4-5. On February 18, 2013, Dr. Werthammer saw Mr. Tomblin for a follow-up. Mr. Tomblin had not started his physical therapy nor was he able to be seen at the pain clinic. Mr. Tomblin had considerable issues with his low back most recently as well as vertigo. The plan called for Mr. Tomblin to see an otolaryngologist regarding his vertigo, begin physical therapy both for the neck and low back, and be referred to a pain specialist.

From February of 2012 through February of 2013 Mr. Tomblin was treated at Coalfield Health Center. The assessment was bilateral upper extremity numbness and edema, hypertension, carpal tunnel syndrome, cervical radiculopathy, cervicalgia, and lumbago. It was recommended that Mr. Tomblin undergo a nerve conduction study, an MRI of the spine, a referral to an orthopedic physician, and pain management. The records do not indicate a positive finding for vertigo. On February 5, 2013 a positive finding of dizziness which occurs suddenly was reported.

Marsha Bailey, M.D., completed an independent medical evaluation on July 18, 2013. Dr. Bailey's assessment was chest wall contusion and left tenth rib fracture which had resolved. She opined that Mr. Tomblin's spine pain, bilateral upper extremity pain and numbness, and lower extremity pain and numbness were unrelated to his compensable injury. Dr. Bailey noted Mr. Tomblin specifically denied back and neck pain in the early medical records and repeatedly denied head injury and loss of consciousness. His first complaint of bilateral hand numbness was not documented until February 20, 2012, which was over ten months following his injury. The vertigo was not documented for the first time until February 5, 2013. She noted the cervical and lumbar spine images revealed the degenerative changes one would expect for his age and weight. She found that he had no evidence of acute injury or herniated disc to support his complaints of pain and showed an extreme amount of symptom magnification. Dr. Bailey opined that he was at maximum medical improvement and did not suffer from any ratable whole person impairment.

Mr. Tomblin was seen at Huntington Ear, Nose, & Throat Specialists on July 25, 2013. The treatment notes indicated that Mr. Tomblin was being seen for balance issues. It was noted that he had an average of five or six attacks a week of a spinning sensation which caused staggering, nausea, and occasionally vomiting. The attacks themselves lasted only for a few minutes. He has a history of possible hearing loss on the left side with tinnitus in both ears for two or three years as well as history of tractor trailer accident two years ago in which he was unconscious for a short period of time. The impression was benign positional paroxysmal vertigo, site to be determined, and mild bilateral 4000 hertz sensorineural hearing loss. Hallpike Maneuver was attempted on two occasions with no nystagmus. The plan called for Mr. Tomblin

to return in one month to determine on which side he gets dizzy. On November 27, 2013, the claims administrator denied the request to add vertigo as a compensable diagnosis.

A January 2, 2014, treatment note from Thomas Jung, M.D., stated that Mr. Tomblin presented with complaints of vertigo, tinnitus, nausea, and vomiting. The severity was listed as severe and that the vertigo interfered with most of his daily activities. Aggravating factors included looking up, down, or backwards; rapid eye movement; rotating the head to the right; walking; and lying down. Relieving factors were holding very still. The assessment was benign paroxysmal positional vertigo and disequilibrium. The plan called for Mr. Tomblin to avoid working in hazardous or high places, avoid driving when dizzy, sleep with his head elevated for three days, and avoid rapid eye movements. The impression was probable benign positional paroxysmal vertigo; however, it was noted that Hallpike Maneuver was negative. Mr. Tomblin stated his symptoms developed after his accident in 2009. Dr. Jung recommended an MRI and follow-up.

On March 27, 2014, Michael Gibbs, M.D., authored a diagnosis update. Dr. Gibbs indicated the primary condition was lumbar degenerative disc disease, and the secondary conditions were degeneration of cervical disc, peripheral neuropathy, and benign paroxysmal positional vertigo. An explanation of the diagnosis update was completed by Dr. Gibbs on April 24, 2014. He indicated why lumbar degenerative disc disease, degeneration of cervical disc, peripheral neuropathy, and benign paroxysmal positional vertigo were related to Mr. Tomblin's accident of April 12, 2011. On April 28, 2014, the claims administrator denied the request to add lumbar degenerative disc disease, degeneration of cervical disc, benign paroxysmal positional vertigo, and peripheral autonomic neuropathy disorder as compensable conditions in this claim.

A November 3, 2014, independent medical evaluation from Jerry Scott, M.D., stated that the diagnoses of vertigo, peripheral autonomic neuropathy disorder, benign paroxysmal positional vertigo, and degeneration of cervical disc were not related to Mr. Tomblin's compensable injury. Dr. Scott stated that according to the report of Joseph Touma, M.D., the vertigo did not begin until well after Mr. Tomblin's compensable injury. Dr. Scott found no relation between the vertigo and the compensable injury. He also noted that there is a high incidence of vertigo without a known cause in individuals, particularly around the age of sixty and older. Dr. Scott opined he was at maximum medical improvement, suffered no impairment, and his vertigo was not related to the compensable injury. On December 18, 2014, a hearing on the matter was held and Mr. Tomblin admitted that his dizzy spells did not occur until a month and a half after the compensable injury.

Prasadarao B. Mukkamala, M.D., completed an independent medical evaluation on February 3, 2015. Dr. Mukkamala concluded that benign paroxysmal positional vertigo, vertigo, peripheral autonomic neuropathy disorder, degeneration of cervical disc, and lumbar degenerative disc disease were not related to the compensable injury. He opined that the rib fracture was related to the compensable injury; however, the back conditions were degenerative in nature. An x-ray of the cervical spine completed on February 12, 2015, revealed degenerative changes with multilevel neural foraminal stenosis. An x-ray of the lumbar spine taken the same day revealed degenerative spondylosis.

On February 26, 2015, Julian Chipley, D.C., completed an independent medical evaluation. Dr. Chipley diagnosed chronic lumbosacral pain, chronic lumbar degenerative disc disease, sciatica with discopathy, chronic cervical pain, chronic cervical degenerative disc disease, chronic thoracic pain, cerviogenic headaches, chronic pain related to trauma, myospasms, sleep disturbance, and non-specific peripheral vertigo. He opined that Mr. Tomblin had reached maximum medical improvement and could not return to work. Dr. Chipley concluded Mr. Tomblin's vertigo complaints are not clearly related to the compensable injury and were not noted until a year after the injury. Dr. Chipley also stated that Mr. Tomblin showed some symptom magnification.

On October 2, 2015, the Office of Judges found that Mr. Tomblin failed to establish that he developed lumbar and cervical degenerative disc disease in the course of and as a result of his employment. The Office of Judges concluded that the scans of record established a distinct and degenerative problem that was not exclusive to his spine. The Office of Judges noted that the April 15, 2011, CT scans revealed degenerative changes in the shoulders as well as the spine. A September 19, 2012, MRI of the cervical spine revealed advanced cervical spine degenerative disc disease throughout the spine. A January 31, 2013, lumbar MRI revealed degenerative disc disease at L2-3, L3-4, and L4-5. The Office of Judges also opined that the scans revealed that the degenerative changes pre-existed the injury. The Office of Judges concluded this fact was corroborated by Dr. Chipley's February 26, 2015, report in which he stated that he believed Mr. Tomblin suffered from significant degenerative disc disease and degenerative joint disease prior to the compensable injury.

The Office of Judges concluded that peripheral autonomic neuropathy disorder was not a compensable condition of the claim. The Office of Judges restated its finding that the cervical and lumbar disc diseases were not compensable conditions. No signs of neuropathy were noted on February 20, 2012, at Coalfield Health Center, which was approximately ten months after the compensable injury. The Office of Judges concluded that there was a significant period of time between the injury and the symptoms. Further, in the nine months before Mr. Tomblin returned to work he did not seek significant medical attention, which would indicate his symptoms were resolving. Furthermore, despite the finding of cervical radiculopathy per an EMG study, there was no clinical correlation of such until August of 2013. The reports of Lincoln County Primary Care dated April 26, 2011, and May 10, 2011, showed an unremarkable neurological exam and five-out-of-five strength bilaterally. The report dated May 21, 2013, revealed motor and sensory function were intact and symmetrical. The July 8, 2013, report found neurologic function grossly unremarkable. The records of Coalfield Health Center revealed deep tendon reflexes of two plus and strength five-out-of-five throughout. On February 20, 2012, Mr. Tomblin was also found to have intact sensations. Dr. Werthammer, a neurosurgeon, found his senses were intact and that he had full strength. The Office of Judges also pointed to the consistent reports of Dr. Bailey, Dr. Scott, and Dr. Mukkamala, all of whom concluded the condition was not caused by the compensable injury. Thus, the Office of Judges concluded that the evidence of record failed to establish that his alleged peripheral autonomic neuropathy disorder was related to or caused by his compensable injury.

The Office of Judges found that Mr. Tomblin failed to establish that vertigo developed in the course of and as a result of his compensable injury. The Office of Judges concluded that the record was too inconsistent and the symptoms too remote. Mr. Tomblin was not diagnosed with vertigo until April 9, 2013. The Office of Judges recognized that this was nearly two years after the compensable injury occurred. Though Mr. Tomblin advised Dr. Bailey in her July 18, 2013, report that he had a head injury with loss of consciousness, the early medical reports of record don't verify it. Dr. Bailey's report is the first of record to notate a head injury. The April 15, 2011, report of St. Francis Hospital stated Mr. Tomblin denied a loss of consciousness. Mr. Tomblin reported no head trauma. The records of MedExpress on the day of the injury did not indicate a loss of consciousness. The Office of Judges concluded that if Mr. Tomblin told a medical provider that he lost consciousness a head image would have been taken, which is further evidence that he did not lose consciousness. Also, the report of Dr. Touma indicated that Mr. Tomblin was exposed to two separate Hallpike Maneuvers and neither showed a reaction consistent with vertigo. Dr. Jung also performed the Hallpike Maneuver and also did not get a positive sign of vertigo. Mr. Tomblin testified that Dr. Bowen of Coalfield Health Center was able to induce a vertigo episode; however, no medical evidence has been introduced to show this. The first sign of dizziness was a February 5, 2015, report which details a positive finding of dizziness which occurs suddenly. The Office of Judges also examined the reports of Dr. Scott, Dr. Mukkamala, and Dr. Chipley. All three physicians concluded that vertigo was not attributable to the compensable injury. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

After review, we agree with the decision of the Office of Judges as affirmed by the Board of Review. In relation to the degeneration of the cervical spine the multiple imaging studies along with multiple physicians' opinions show that it was long-term and chronic in nature as opposed to the result of an acute injury. The peripheral autonomic neuropathy disorder was related to the degeneration of the spine, which, was not a compensable condition of the claim. In relation to the vertigo diagnosis, the symptoms did not occur until well after the injury and no physician could trace vertigo to the compensable injury. Because the Office of Judges and Board of Review's decisions were supported by the evidence of record, we affirm.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 8, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Menis E. Ketchum